Frances B. ANDERSON et al., Appellants,

v.

NORFOLK & WESTERN RAILWAY
COMPANY, Appellee.

Court of Appeals of Kentucky.

May 15, 1959.

O. T. Hinton, Hinton & May, F. M. Burke, Pikeville, for appellants.

Baird & Hays, Pikeville, for appellee.

SANDIDGE, Judge.

Oliver Anderson, Lee Anderson, Elsie Miller, Zella O'Brien and Sarah A. Miller, hereinafter referred to as the Anderson Heirs, own a tract of land containing approximately 300 acres on Feds Creek in Pike County.

In 1945 the Norfolk & Western Railway Company, by condemnation proceedings, acquired a right-of-way along the northern boundary of the tract for the construction, maintenance and operation of its railroad, with the right-of-way at some points including a part of Feds Creek. Generally speaking, the right-of-way is along the southern side of Feds Creek, and immediately north of and approximately parallel with the creek there is a paved highway. Due to the terrain the railroad tracks on the right-of-way were constructed on a fill and are considerably higher than the level of the creek and highway.

In February, 1951, the Anderson Heirs sold all the timber on their tract to Roland Rowe, and he was given three years in which to cut and remove it. Roland Rowe assigned his rights under the contract to Levisa River Lumber Company, a name in which his wife, Clara Rowe, was transacting business.

The Rowes employed Clell Miller and Richard O'Brien to cut the timber and they cut a part of it during February and March of 1951. In April, 1951, Roland Rowe directed them to construct a bridge over Feds Creek for use in connection with a proposed crossing over the railroad track and right-of-way for the removal of such timber to the highway.

On April 19, 1951, Oliver Anderson wrote to the Railway Company at Grundy, Va., requesting permission to construct a crossing over its track and right-of-way along Feds Creek.

Pursuant to such direction from Rowe, Miller and O'Brien commenced and partially completed the construction of the bridge over Feds Creek. It was located partially, if not entirely on the railroad right-of-way. Upon learning of this, the Railway Company's Roadmaster wrote Miller and O'Brien on April 24, 1951, requesting the removal of the bridge. They replied on May 15, 1951, advising in substance that the bridge had been taken down, and inquired whether the Railway

Company would build a crossing over its right-of-way at that point.

Pursuant to the letter of April 19, 1951, from Oliver Anderson the Railway Company proceeded to make an investigation concerning the proposed location and other necessary facts in connection with the requested crossing. During the investigation it received a letter dated July 23, 1951, from an attorney at Pikeville, which purported to be written on behalf of Roland Rowe, concerning a proposed crossing over the right-of-way for his use in removing timber. On August 16, 1951, the Railway Company replied to the attorney and asked whether the crossing sought by Oliver Anderson and the one requested for Mr. Rowe were one and the same crossing or different crossings. It received no reply, but by subsequent investigation ascertained that they were seeking the same crossing.

In October, 1951, the Railway Company's legal department prepared and forwarded a proposed agreement between it, Anderson and Rowe, which authorized the construction of a crossing according to certain specifications, and under certain terms and conditions. Anderson and Rowe declined to accept or execute the proposed agreement.

On December 13, 1951, this litigation was commenced in the Pike Circuit Court by the Anderson Heirs and their respective husbands and wives and Roland Rowe and Clara Rowe, as plaintiffs, filing a petition in equity against the Norfolk & Western Railway Company, as defendant. The petition, as three times amended, prayed an injunction against the defendant, to enjoin it "from interfering with them in constructing a bridge across Feds Creek and a crossing over the defendant's track," and to enjoin it from interfering with Clara Rowe and her employees in removing timber from the land across its track, and for damages in the aggregate sum of $59,535.

A few days after the petition was filed the plaintiffs and defendant reached an agreement with respect to the location, construction and maintenance of a bridge and crossing over the right-of-way, and the construction was completed in January, 1952. The agreement removed the injunction issue from the case and all that remained was the question of damages.

The case was referred to the Master Commissioner for trial and findings as to both the facts and law. After hearing voluminous testimony, the commissioner reported the plaintiffs were not entitled to recover damages, and his report was approved and confirmed by the lower court. Thereupon judgment was entered, adjudging the plaintiffs were entitled to a private grade crossing over the right-of-way, including a bridge across Feds Creek at the point where it has been constructed under the terms and conditions of the agreement between the parties. It was further adjudged that the petition as amended be dismissed insofar as damages claimed against the defendant were concerned, and that the plaintiffs recover all costs expended by them.

The case is pending here on the appeal of all the Anderson Heirs, except Oliver Anderson, and the appeal of Clara Rowe from so much of the judgment as denied damages, and on the cross-appeal of the Railway Company from so much of the judgment as awarded plaintiffs their costs.

■ This litigation was instituted in 1951, and all steps prior to July 1, 1953, are governed by the procedure in effect before the adoption of our present Rules of Civil Procedure.

The petition as amended sought the creation or establishment of a private crossing over the railroad right-of-way, as distinguished from injunctive relief against interference with a previously established crossing easement. It was predicated on the theory that appellants were entitled to a private crossing over the right-of-way as a matter of right and necessity.

■ A way of necessity grows out of an implied grant or reservation, is a crea-

tion of the common law, and can be established by common law proceedings. It is well settled in Kentucky that a court of equity can interpose in behalf of a person whose right to the use of a passway already in existence has been interfered with or obstructed, but it has no jurisdiction of a case where the establishment of a passway is claimed on the ground of mere necessity. Mere necessity for an easement over the property of another cannot afford grounds for its creation or establishment by injunction. Hall v. McLeod, 59 Ky. 98, 2 Metc. 98; Haffner v. Bittell, 198 Ky. 78, 248 S.W. 223. It follows that until a crossing easement is legally established, the person over whose property it is desired owes no duty with respect thereto.

The commissioner proceeded on the erroneous assumption that it was the duty of appellee to grant the appellants permission to construct a private crossing and bridge over the right-of-way within a reasonable time after written request was made, and concluded such permission should have been granted within ninety days after Oliver Anderson made his request on April 19, 1951. The commissioner found the plaintiffs could not recover damages for any loss sustained because of their inability to remove the timber prior to July 20, 1951, and further found that the damages alleged to have been sustained after that date were too remote and speculative.

■ Although the commissioner erred in concluding that under the circumstances involved it was the duty of appellee to grant a crossing permit within ninety days after the application, the error was more favorable than prejudicial to the appellants. Appellee owed the appellants no duty in connection with the present crossing until after it was constructed by agreement in January, 1952. It could only be liable for damages that were the proximate result of a violation of the latter duty. None were shown.

■ We might add that the facts involved in this litigation are controlled by KRS 381.580, which expressly provides for a private passway being obtained over a railroad right-of-way by condemnation proceedings. Cincinnati, N. O. & T. P. R. Co. v. Keith, 311 Ky. 627, 224 S.W.2d 942; Hudgens v. Register, Ky., 285 S.W. 2d 504. This statute superseded the common law on the subject, and until a passway is obtained as set out therein, a railway company owes no duty to a petitioner with respect to same. The statute does not preclude a passway being obtained over a railroad right-of-way by agreement of parties. In the present instance there was no attempt to follow such statutory provision, and no agreement between the parties until December, 1951. Certainly, the appellee would not be liable to appellants for anything that happened before that time with respect to previously cut timber deteriorating in value, a decline in the market price, or for the other reasons alleged.

■ It is argued the appellee does not own the fee in the land covered by its right-of-way, and has only an easement to use same for railroad purposes. Even if that be true, it has under our decisions an exclusive easement which constitutes "land" under KRS 446.010.

■ The lower court gave no reason why the appellants were awarded their costs. The mere fact that appellee agreed the crossing and bridge might be constructed on its right-of-way, when it was under no legal obligation to so agree, is no basis for imposing costs upon it.

The judgment is affirmed on the original appeal, is reversed on the cross-appeal, and this cause is remanded for the entry of a judgment in conformity herewith.